ADR

E-FILING

FILED

JAN 06 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Evan J. Smith (SBN 242352)
    BRODSKY & SMITH, LLC
2   9595 Wilshire Blvd., Suite 900
    Beverly Hills, CA 90212
3   Telephone: (877) 534-2590
    Facsimile: (310) 247-0160
4   esmith@brodsky-smith.com

5   *Attorneys for Plaintiff*

6

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  SUNIL NAGPAL, on behalf of himself and all others )
    similarly situated,                                )   CV 12-00126
12                                                      )                    PSG
                                                        )
13                        Plaintiff,                    )
                 vs.                                    )   CLASS ACTION COMPLAINT
14  NOVELLUS SYSTEMS, INC., RICHARD S. HILL, )
    WILLIAM R. SPIVEY, NEIL R. BONKE, YOUSSEF )
15  A. EL-MANSY, GLEN G. POSSLEY, DELBERT )
    WHITAKER, YOSHIO NISHI, ANN D. RHOADS, )
16  KRISHNA    SARASWAT,    LAM    RESEARCH )
    CORPORATION and BLMS INC.                           )
17                                                      )
                          Defendants.                   )
18  _____ )

19

20                      **CLASS ACTION COMPLAINT**

21        Plaintiff Sunil Nagpal ("Plaintiff"), by and through his attorneys, alleges upon personal

22  knowledge as to himself, and upon information and belief based upon, among other things, the

23  investigation of counsel as to all other allegations herein, as follows:

24                        **SUMMARY OF THE ACTION**

25        1.    Plaintiff brings this shareholder class action on behalf of himself and all other public

26  shareholders of Novellus Systems, Inc. ("Novellus" or the "Company"), against Novellus, its Board

27  of Directors (the "Board" or the "Individual Defendants) Lam Research Corporation, ("Lam

28

                                      - 1 -

Research") and BLMS Inc. (the "Merger Sub") (collectively, the "Defendants"), arising out of a transaction in which Lam Research will acquire each share of Novellus' common stock in an all-stock transaction valued at approximately $3.3 billion (the "Proposed Acquisition").  Upon the consummation of the Merger, each share of Company common stock issued and outstanding immediately prior to the closing of the Merger will be cancelled and converted into the right to receive 1.125 shares (the "Exchange Ratio") of common stock of Lam Research.  Based on the closing price of Lam Research stock on December 14, 2011, the transaction values Novellus at a price of $44.42 per common share.

2.      In approving the Proposed Acquisition, however, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Novellus without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Acquisition to benefit themselves and/or Lam Research without regard for Novellus' public shareholders.  Accordingly, this action seeks to enjoin the Proposed Acquisition and compel the Individual Defendants to properly exercise their fiduciary duties to Novellus' shareholders.

3.      Absent judicial intervention, the merger will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the unreasonable steps taken by the Defendants in entering into the merger agreement without attempting to maximize shareholder value in order to obtain millions of dollars in benefits for themselves.  Immediate judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's shareholders.  Plaintiff, on behalf of the Class, seeks only to level the playing field and to ensure that if shareholders are to be ultimately stripped of their respective equity interests in Novellus through the Proposed Acquisition, that the Proposed Acquisition is conducted in a manner that is not overtly improper, unfair and illegal, and that all material information concerning the Proposed Acquisition is

1   disclosed to the Novellus shareholders so that they are able to make informed decisions as to

2   whether to vote in favor or against the Proposed Acquisition or to seek appraisal of their shares.

3                                          **PARTIES**

4          4.      Plaintiff, Sunil Nagpal, is a citizen of the United States and the State of California.

5   The Plaintiff is, and at all times relevant hereto has been, a Novellus shareholder. Plaintiff presently

6   holds 2,000 shares of Novellus stock.

7

8          5.      Novellus Systems, Inc. ("Novellus" or the "Company") is a California corporation

9   with its principal executive offices located at 4000 North First Street, San Jose, CA 95134. Novellus

10  is a leading supplier of chemical vapor deposition (CVD), physical vapor deposition (PVD),

11  electrochemical deposition (ECD), ultraviolet thermal processing (UVTP), and surface preparation

12  equipment used in the manufacturing of semiconductors. The Company's legacy PECVD, HDP

13  CVD, W-CVD, PVD, and ECD products are used to deposit extremely thin films of insulating and

14  conductive materials that are used to create the wiring on a chip. Other Novellus products are used

15  to clean the surface of the chip in-between manufacturing steps (surface preparation), or to post-treat

16

17  deposited films in order to improve mechanical properties (UVTP). As circuit geometries decrease

18  in size, the deposition, surface preparation, and film treatment systems manufactured by Novellus

19  become increasingly critical technologies for manufacturing advanced semiconductor devices.

20  Novellus' common stock is publicly traded on NASDAQ under the symbol "NVLS."

21         6.      Defendant Richard Hill ("Hill") has served as the Company's Chief Executive Officer

22  ("CEO") and a member of the Board since December 1993. Hill was appointed Chairman of the

23  Board in May 1996 and is responsible for Sales, Service and Marketing. Hill will remain engaged

24  with the go-forward company under a consulting agreement that will make him available to the Lam

25  Research board and the management team. Following the deal announcement, Hill sold 121,708

26  shares on December 15, 2011.

27

28         7.      Defendant William R. Spivey ("Spivey") has served as the Lead Independent

                                        - 3 -

Director, Chairman of Governance & Nominating Committee and member of Compensation Committee since 1998. Following the deal announcement, Spivey sold 15,000 shares on December 15, 2011.

8.    Defendant Neil R. Bonke ("Bonke") has served as a director and Chairman of the Audit Committee since 2004.

9.    Defendant Youssef A. el-Mansy ("el-Mansy") has served as a Director, Chairman of the Compensation Committee and a member of the Governance and Nominating Committee since 2004.

10.    Defendant Glen G. Possley ("Possley") has served as a Director and a member of the Audit Committee since 1991.

11.    Defendant Delbert A. Whitaker ("Whitaker") has served as a Director and a member of the Audit Committee since 2002.

12.    Defendant Yoshio Nishi ("Nishi") has served as a Director, member of the Governance and Nominating and Compensation Committees since 2002.

13.    Defendant Ann D. Rhoads ("Rhoads") has served as a Director, member of the Governance and Nominating and Compensation Committees since 2002.

14.    Defendant Krishna Saraswat ("Saraswat") has served as a Director since 2011.

15.    Defendants Hill, Spivey, Bonke, el-Mansy, Possley, Posner, Whitaker, Nishi, Rhoads and Saraswat are collectively referred to as "Individual Defendants" or the "Board." By reason of their positions as officers and/or directors of the Company, the Individual Defendants are in a fiduciary relationship with plaintiff and the other Novellus public shareholders, and owe plaintiff and Novellus' other shareholders the highest obligations of loyalty, good faith, fair dealing, due care, and full and fair disclosure.

16.    Defendant Lam Research, Inc. ("Lam Research") is a Delaware corporation with executive offices located at 4650 Cushing Parkway, Fremont, CA 94538-6401.  Lam has been a

major supplier of wafer fabrication equipment and services to the worldwide semiconductor industry for more than 30 years. Lam Research's common stock is publicly traded on NASDAQ under the symbol "LRCX.

17.     Defendant BLMS Inc. (the "Merger Sub"), is a California corporation and a wholly owned subsidiary of Lam Research.

18.     Collectively, Novellus, the Individual Defendants, Lam Research and Merger Sub are referred to herein as the "Defendants."

## JURISDICTION AND VENUE

19.     Jurisdiction is founded upon federal question jurisdiction, pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d)(2) because (i) there are one-hundred or more putative class members; (ii) at least one class member is a citizen of a state different from the state of any defendant; and (iii) the aggregate amount in controversy exceeds $5 million, exclusive of costs and interest. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

20.     Venue is proper under 28 U.S.C. §1391(b)(2) because Novellus maintains offices in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.  Moreover, each of the Individual Defendants as Company officers and/or directors has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 on behalf of all holders of Novellus common stock who are being and will be harmed by Defendants' actions described below ("Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

22.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable. As of

1    December 27, 2011, there were approximately 66,590,000 shares of Novellus
2    common stock issued and outstanding, the holders of which are
     geographically dispersed throughout all fifty United States. The actual
3    number of public shareholders of Novellus will be ascertained through
     discovery.

4    (b)    There are questions of law and fact that are common to the Class, including:

5
6          i)     whether the Individual Defendants have breached their fiduciary
                  duties with respect to Plaintiff and the other members of the Class in
7                 connection with the Proposed Acquisition;

8          ii)    whether the Individual Defendants have breached their fiduciary duty
                  to obtain the best price available for the benefit of Plaintiff and the
9                 other members of the Class in connection with the Proposed
                  Acquisition;
10
11         iii)   whether the Proposed Acquisition is unfair to the Class, in that the
                  price is inadequate and is not the fair value that could be obtained
12                under the circumstances;

13         iv)    whether Plaintiff and the other members of the Class would suffer
                  irreparable injury were the Proposed Acquisition complained of
14                herein consummated; and

15         v)     whether the Class is entitled to injunctive relief and/or damages as a
16                result of the wrongful conduct committed by Defendants

17   (c)    Plaintiff is an adequate representative of the Class, and has retained
            competent counsel experienced in litigation of this nature and will fairly and
18          adequately protect the interests of the Class.

19   (d)    Plaintiff's claims are typical of the claims of the other members of the Class
20          and Plaintiff does not have any interests adverse to the Class.

21   (e)    The prosecution of separate actions by individual members of the Class
            would create a risk of inconsistent or varying adjudications with respect to
22          individual members of the Class which would establish incompatible
23          standards of conduct for the party opposing the Class.

24   (f)    Defendants have acted on grounds generally applicable to the Class with
            respect to the matters complained of herein, thereby making appropriate the
25          relief sought herein with respect to the Class as a whole.

26
27
28

- 6 -

PLAINTIFF'S CLASS ACTION COMPLAINT

1

## SUBSTANTIVE ALLEGATIONS

2

23.     On December 14, 2011, Novellus and Lam Research issued a joint press release

3

announcing that Lam Research has entered into a definitive merger agreement to acquire Novellus in

4

an all-stock transaction valued at approximately $3.3 billion.  According to the press release:

5

6      FREMONT, Calif., and SAN JOSE, Calif., December 14, 2011 – Lam Research
       Corp. (NASDAQ: LRCX) today announced that it has entered into a definitive
7      merger agreement to acquire Novellus Systems, Inc. (NASDAQ: NVLS) in an all-
       stock transaction valued at approximately $3.3 billion. The combined enterprise,
8      which will retain the name of Lam Research Corp., will be a semiconductor
       equipment company with a broad portfolio of market-leading products and
9      multiple opportunities to drive value creation through significant revenue and cost
       synergies. Total cost synergies are expected to be approximately $100 million on
10     an annualized basis by the fourth quarter of 2013. In addition, Lam announced a
       $1.6 billion common stock repurchase program. This new program, which
11     replaces Lam's existing share repurchase program, is targeted to be executed over
       the 12 months following the close of the transaction. Lam expects the transaction
12     to be accretive to its non-GAAP earnings within one year after transaction close.

13

14     Lam Research and Novellus Systems are among the world's largest manufacturers
       of semiconductor equipment, both companies playing a pivotal role in defining
15     the features and capabilities of next-generation devices. The two companies
       possess complementary product capabilities, with Lam's leadership in etch and
16     single-wafer clean equipment aligning with Novellus's leadership in thin-film
       deposition and surface preparation technologies. The combined company will be
17     well-positioned to lead the industry through critical technology transitions
       including 3D structures in advanced logic and NAND memory as well as the
18     scaling to 450 mm wafers. The combined company will also be positioned to
       grow revenue at a faster rate than either company could achieve individually by:
19

20          *       Advancing technical benefits from owning adjacent technologies;

21
            *       Optimizing and accelerating collective development of next-
22                  generation tools; and

23          *       Further developing complementary customer relationships.

24     Under the terms of the agreement, Novellus stockholders will receive 1.125
       shares of Lam Research common stock for each share of Novellus that they own,
25     in a tax-free exchange. Based on the closing price of Lam's stock on
       December 14, 2011, the transaction values Novellus at a price of $44.42 per
26     common share. Upon closing, Lam and Novellus stockholders will own
       approximately 59 percent and 41 percent, respectively, of the combined company.
27

28     Lam's $1.6 billion stock repurchase program will be funded from the combined
       company's existing on-shore cash and on-shore cash generation. Assuming

PLAINTIFF'S CLASS ACTION COMPLAINT

completion of the stock repurchase program, this will essentially result in a total financial impact on the company as if the deal were structured with approximately 48 percent cash.

"This strategic combination positions Lam Research to lead the development of next-generation semiconductor manufacturing technology and productivity solutions at a time when growing semiconductor demand and increased device complexity are creating significant business opportunities," said Steve Newberry, vice chairman and chief executive officer of Lam Research. "Novellus's strong capabilities and market leadership in deposition and surface preparation technologies enable Lam to become more deeply entrenched in critical semiconductor manufacturing processes that are important to our customers. We believe the adjacency of our process technologies will provide significant technical benefits that will enable us to achieve greater success together and accelerate our growth."

Richard Hill, chairman and chief executive officer of Novellus, said, "We believe the combination of Lam and Novellus is great news for our customers, investors and employees. The complementary skills, technologies and product offerings of Lam and Novellus will create a strong platform for delivering innovative and cost-effective solutions. For our investors, it presents an ability to participate in the combined company's future value creation potential."

Martin Anstice, who, as previously announced, will assume the position of CEO of Lam Research from Steve Newberry effective January 1, 2012, will continue as CEO following the close of the transaction. He is currently Lam's president and chief operating officer. Timothy Archer, chief operating officer of Novellus, will become chief operating officer of the combined company; and Ernest Maddock, chief financial officer of Lam, will remain chief financial officer. The board of directors of Lam will add four new directors jointly nominated by Lam and Novellus.

Anstice said, "We are excited to join forces with a remarkable company like Novellus. We believe that the people, products and technology that Novellus brings to Lam Research will position the combined company to accelerate revenue and earnings growth, realize significant operating efficiencies, and deliver stockholder value. Together, we believe that we will be able to optimize technology and product roadmaps, strengthen our competitive position in the market, and leverage complementary customer relationships to accelerate growth."

The closing of the transaction is subject to customary conditions, including approval by Lam's and Novellus's stockholders and review by U.S. and international regulators. The companies expect the transaction, which has been unanimously approved by both Lam's and Novellus's boards of directors, to close in the second calendar quarter of 2012.

Goldman, Sachs & Co. acted as the exclusive financial advisor, and Jones Day acted as legal counsel to Lam. BofA Merrill Lynch acted as the exclusive financial advisor, and Morrison & Foerster LLP acted as legal counsel to Novellus.

PLAINTIFF'S CLASS ACTION COMPLAINT

24.     On December 14, 2011, Novellus also filed a Form 8-K with the SEC, disclosing its Agreement and Plan of Merger and Reorganization for the Proposed Acquisition (the "Merger Agreement").

25.     While Lam Research CEO Steve Newburry has attempted to spin his company's takeover of Novellus as a merger of equals, it is clear that the Proposed Acquisition is calculated to benefit Lam Research. Both companies expressly acknowledged in the press release that the Proposed Acquisition is calculated to benefit Lam Research. Specifically, the press release provides, in pertinent part, as follows:

> "Significant synergies expected to accelerate Lam's revenue and earnings growth...
>
> This strategic combination positions Lam Research to lead the development of next-generation semiconductor manufacturing technology and productivity solutions at a time when growing semiconductor demand and increased device complexity are creating significant business opportunities," said Steve Newberry, vice chairman and chief executive officer of Lam Research. "Novellus' strong capabilities and market leadership in deposition and surface preparation technologies enable Lam to become more deeply entrenched in critical semiconductor manufacturing processes that are important to our customers."

26.     Pursuant to the terms of the Proposed Acquisition, Novellus shareholders would receive only 1.125 shares of Lam Research stock for every share they own or the equivalent of $44.42 per common share based on Lam Research's closing stock price on December 14, 2011. However, since the announcement of the Proposed Acquisition, Lam Research shares have declined approximately 7% and opened for trading on December 27, 2011, at $36.73. Based on the $36.73 share price, Novellus shareholders would receive the equivalent of $41.32 for each share they own. Significantly Novellus shares traded as high as $41.38 on March 4, 2011 and at least one Yahoo! Finance analyst following the Company has set a price target of $67.50 for Novellus shares leaving Novellus shareholders with little to no premium for their shares. Shares of Lam Research have

fallen nearly 30% this year and could continue to do so until the Proposed Acquisition is consummated.

27.     In fact, Lam Research is paying a smaller premium than the average paid by buyers of semiconductor-equipment makers in recent years.  In deals valued at more than $250 million during the past five years, acquirers have paid an average premium of 56%, Bloomberg data shows.  The Proposed Acquisition is the largest in the industry since Applied Materials announced plans in May to buy Varian Semiconductor Equipment Associates Inc. for $4.9 billion in cash.  In that deal, Applied paid a 55 percent markup over Varian's closing price -- almost double the premium in the Novellus acquisition.

28.     Novellus' recent financial performance has been nothing, if not impressive. Over the past 12 months, Novellus generated $344.6 million cash while it booked net income of $293.7 million.  That means it turned 23.7% of its revenue into FCF.  Compared to industry peers and competitors, that 23.7% FCF is far superior to Kulicke & Soffa Industries (23.2%), Applied Materials (21.1%) and ASM International's (8.6%).

29.     According to Ivan Deryugin ("Deryugin") of Helix Investment Management, Novellus will boost Lam Research's revenues by over 48% when the merger is completed. Furthermore, merging with Novellus allows Lam Research to gain Intel as a customer, and Lam Research now has the opportunity to sell more of its own equipment to Intel using Novellus' sales force.

30.     According to Deryugin, the benefits of the Proposed Acquisition to Lam Research are many, including.

    (a)     Lam Research can boost EPS by almost 20%;

    (b)     Cost synergies will allow Lam Research to lower annual costs by $100 million by the end of 2013;

    (c)     Novellus' gross margin of 48% easily beats Lam Research's gross margin of 41.7%, thus allowing Lam Research the potential to raise its own margins; and

PLAINTIFF'S CLASS ACTION COMPLAINT

(d)     Lam Research has the ability to expand its sales to Intel even more via Novellus' sales force.

31.     The S&P also like this deal for Lam Research.  Upon the breaking of the merger announcement, S&P declared that it is putting Lam Research's BB+ credit rating on watch for a possible upgrade, citing that, "Lam Research's business risk profile will improve as a result of materially better product diversity. -- Pro forma leverage will rise only moderately despite the acquisition and significant planned share repurchases."

32.     Stephen D. Simpson ("Simpson") of Investopedia.com notes that "this deal makes sense for Lam on multiple fronts.  For starters, the companies offer complementary products and technologies with minimal overlap."  Simpson stated further:

> "This deal also puts Intel into play as a potential Lam customer.  Intel is a major buyer of semiconductor capital equipment (almost always a 10% player, and sometimes responsible for close to 20% of spending in a given year), but historically has not done business with Lam.  In contrast, Novellus and Intel have a long relationship with each other, so clearly Lam will hope to bring Intel in as a customer for their etching and cleaning products.
>
> Buying Novellus will also help adjust Lam's above-average exposure to memory companies.  Although memory can be a solid business opportunity (and Lam has Samsung as one of its major customers), it's also even more cyclical than chips in general."

33.     Furthermore, analysts love this deal for Lam Research and the current Reuters average price target for Lam Research is $47.75, implying upside of 29.93% from current levels.  Below is a summary of analyst rating changes for Lam Research, as well as their views on the deal, none of which indicate why the Proposed Acquisition is to the benefit of Novellus shareholders:

(a)     Barclays: "We like this transaction as we believe it sets the path for meaningful share gains as increasingly more complex semiconductor manufacturing benefits from the combination of the best of breed tools from LRCX/NVLS." Adjusted EPS of the two companies after the combination closes could total $4.40 per share." The firm maintained an outperform rating and $46 price target on Lam Research.

- 11 -

(b)     Citigroup: "We love this deal." The takeout premium of 30%, equating to 1.9 times as a multiple of enterprise value to sales, and a 12 times P/E, is "far lower than the Applied Materials/Varean [Varian] Semiconductor deal," earlier this year, which came at a 55% premium and 4.1 times EV-to-sales."

(c)     Stifel Nicolaus: "Favorably biased toward the long-term prospects of the combined company." There is minimal overlap in the two companies' product portfolios, a complementary base of customers between them, and the increased scale when they combine will accelerate growth prospects."

(d)     Needham: "The deal will 1) improve LCRX's financial leverage; 2) add Intel as one of its largest customers; 3) offer many opportunities for cost savings; 4) create new opportunities in product offerings; and 5) build common platforms on 450mm.

34.     In addition to statements in the press release which unequivocally indicate the Proposed Acquisition is for the benefit of Lam Research, Exhibit 99.8 Frequently Asked Questions ("FAQ") of the Form 8-K filed by Novellus repeatedly does the same.  The FAQ provides in relevant part:

Q:     Why did Lam combine with Novellus at this time?

A:     Today's industry dynamics make the timing of this transaction critical. Our customers are facing unprecedented technology challenges driven by increased process complexity and increasing manufacturing costs with each subsequent technology node. As a combined entity, we will be able to leverage our technology adjacencies to more quickly deliver solutions addressing our customers' technology and productivity challenges.

Moreover, the combination better positions Lam to address the industry's expected migration to 3D device technology and to 450 mm wafers. The transition to 450 mm technology is an expensive proposition for equipment makers. By leveraging adjacent technologies and integrating R&D resources, we can make this transition more cost effective
                                    ***

Q:     Why should Lam's shareholders be pleased with this transaction?

A:     The addition of Novellus makes Lam a stronger partner with customers and enhances revenue growth potential. The combined company will have a broader product portfolio, and a stronger financial profile. Lam shareholders will also receive upside from synergies realized. In addition, Lam shareholders will benefit from the authorized $1.6 billion share repurchase program. The transaction is expected to be accretive to EPS on a non-GAAP basis within 12 months post transaction close. Assuming completion of the stock repurchase program, this will essentially result in

- 12 -
PLAINTIFF'S CLASS ACTION COMPLAINT

a total financial impact on the company as if the deal were structured with approximately 48 percent cash.

*\*\**

Q:   What premium is Lam paying, and why should Lam's shareholders be satisfied with the price being paid?

A:   Novellus shareholders will receive 1.125 shares of Lam for every share of Novellus owned. Based on the closing price of Lam's stock on December 14, 2011, the transaction values Novellus at a price of $44.42 per common share. The purchase price reflects a multiple of 16.5 times analyst consensus estimates for 2012 earnings. Assuming completion of the stock repurchase program, this will essentially result in a total financial impact on the company as if the deal were structured with approximately 48% cash.

The transaction is expected to be accretive to Lam's earnings on a non-GAAP basis within 12 months following deal closure. The transaction can generate significant shareholder value, resulting from the additional market opportunities that the combined company can address and the revenue and cost synergies that can be achieved through the transaction. We are confident in our ability to achieve the synergy opportunities available in this transaction.

35.   Additionally, while Lam Research will add four new directors jointly nominated by Lam Research and the Company, they will comprise only 27% of the newly composed Lam Research Board of Directors while Novellus stockholders will hold 41% of the combined company. Timothy Archer, chief operating officer of Novellus, will become chief operating officer of the combined company and Defendant Hill will remain engaged with the company under a consulting agreement that will make him available to the board and the management team.

36.   As such, the Proposed Acquisition will allow Lam Research to purchase Novellus at an unfairly low price while availing itself of Novellus' significant value and upside or long-term potential.

## PRECLUSIVE DEAL PROTECTION DEVICES

37.   The Merger Agreement contains certain provisions that unduly benefit Lam Research by making an alternative transaction either prohibitively expensive or otherwise impossible. For example, the Merger Agreement contains a termination fee provision that requires Novellus to pay

$120,000,000 to Lam Research if the Merger Agreement is terminated under certain circumstances. For instance, under one scenario, Novellus must pay this fee plus an additional $80,000,000 even if it consummates any Company Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement. Therefore, Novellus will have a total of $200,000,000 in termination exposure.

38.     In contrast, the Merger Agreement does not require Lam Research to pay a reciprocal termination fee to Novellus under *any* circumstances.

39.     In addition, the termination fee payable under this provision equals approximately 6% of the total value of the Proposed Acquisition as of the date it was announced – an amount that will make the Company that much more expensive to acquire for potential purchasers, while resulting in a corresponding decline in the amount of consideration payable to Novellus' shareholders. In addition, this fee can actually exceed 6% of the total deal value if the price of Lam Research's common stock declines prior to the close of the Proposed Acquisition. To date, Lam Research's stock price has declined approximately 7% since the announcement of the Proposed Acquisition.

40.     The Merger Agreement also contains a "No Company Solicitation of Transactions" provision that restricts Novellus from considering alternative acquisition proposals by, *inter alia*, constraining Novellus' ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits Novellus from soliciting any alternative proposal, but permits the Board to consider an unsolicited proposal only if it constitutes or is reasonably calculated to lead to a "Company Acquisition Proposal" as defined in the Merger Agreement. However, even the Board's consideration of unsolicited proposal is restricted: prior to considering any such proposal, the Board must determine, in consultation with its financial advisors, that its fiduciary duties require it to consider the proposal. Thus, the Board cannot consider alternative proposals even if it reasonably believes that any such proposal would be beneficial to shareholders.

PLAINTIFF'S CLASS ACTION COMPLAINT

41.     Further, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, Novellus agreed to provide Lam Research information in order to match any other offer, thus providing Lam Research access to the unsolicited bidder's financial information and giving Lam Research the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Lam Research.

42.     Finally, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.   In a conventional stock-for-stock transaction, the parties customarily negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.  In other cases, the parties limit the stock component of the consideration (and thus the volatility in the value of the consideration), by agreeing that the shareholders will receive cash *and* stock in exchange for their shares.  Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.  The Merger Agreement contains none of these protections. Rather, the Merger Agreement contains a *fixed* exchange ratio of 1.125 which means that Novellus shareholders will receive 1.125 shares of Lam Research common stock for each of their shares, *regardless of Lam Research's stock price at the close of the transaction.*  Thus, the consideration payable to Novellus shareholders is not insulated from fluctuations in Lam Research's stock price, and shareholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.  Significantly, as set forth in herein, since the announcement of the merger, shares of Lam Research have dropped approximately 7%.

43.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Acquisition and the Proposed Acquisition is the product of the Board's breaches of fiduciary duty, aided and abetted by Lam Research.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES.

PLAINTIFF'S CLASS ACTION COMPLAINT

44.    In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to act in the best interests of the company's shareholders, including the duty to obtain maximum value under the circumstances. To diligently comply with these duties, the directors may not take any action that:

(a)    adversely affects the value provided to the corporation's shareholders;

(b)    will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)    contractually prohibits them from complying with their fiduciary duties; and/or

(d)    will provide the directors, executives or other insiders with preferential treatment at the expense of, or separate from, the public shareholders, and place their own pecuniary interests above those of the interests of the company and its shareholders.

45.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Novellus, are obligated to refrain from:

(a)    participating in any transaction where the directors' or officers' loyalties divided;

(b)    participating in any transaction where the directors or officers are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

46.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, violated, and are violating, the fiduciary duties they owe to Plaintiff and the other public shareholders of Novellus, including their duties of loyalty, good faith, candor, and due care. As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Novellus common stock in the Proposed Acquisition.

PLAINTIFF'S CLASS ACTION COMPLAINT

47.     As a result of these breaches of fiduciary duty, the Company's public shareholders will not receive adequate or fair value for their common stock in the Proposed Acquisition.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty against the Individual Defendants)

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     As alleged herein, Defendants have initiated a process to sell Novellus that undervalues the Company and vests them with benefits that are not shared equally by Novellus' public shareholders – a clear effort to take advantage of the temporary depression in Novellus' stock price.  In addition, by agreeing to the Proposed Acquisition, Defendants have capped the price of Novellus at a price that does not adequately reflect the Company's true value.  Moreover, Defendants failed to sufficiently inform themselves of Novellus' value, or disregarded the true value of the Company, in an effort to benefit themselves.  Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and board that is committed to the Proposed Acquisition.

50.     As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of shareholder value and the disclosure of material information.

51.     Plaintiff and the members of the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

### (Aiding and Abetting the Board's Breaches of Fiduciary Duty against Defendants Lam Research and Novellus)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

- 17 -

PLAINTIFF'S CLASS ACTION COMPLAINT

53.     Defendants Lam Research and Novellus knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

54.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

55.     Plaintiff and the members of the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands relief in their favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action, certifying Plaintiff as Class representative and certifying his counsel as class counsel;

B.     Declaring and decreeing that the Proposed Acquisition was entered into in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable, and rescinding and invalidating any merger agreement or other agreements that Defendants entered into in connection with, or in furtherance of, the Proposed Acquisition;

C.     Preliminarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition;

D.     Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of Novellus' shareholders;

E.     Imposing a constructive trust, in favor of Plaintiff and the Class, upon any benefits improperly received by Defendants as a result of their wrongful conduct;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

1    G.    Granting such other and further equitable relief as this Court may deem just and

2  proper.

3                          **DEMAND FOR JURY TRIAL**

4        Plaintiff hereby demands a jury on all issues which can be heard by a jury.

5  Dated: January 5, 2012                         Respectfully submitted,

6                                                 BRODSKY & SMITH, LLC

7

8                                                 By:
                                                   Evan J. Smith
9                                                 9595 Wilshire Boulevard, Suite 900
                                                   Beverly Hills, CA 90212
10                                                Telephone: (877) 534-2590

11                                                *Counsel for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     - 19 -